MARGARET CORBETT, Executrix, Appellee, v. WALKER D. HINES, Director General of Railroads, Appellant.

**RAILROADS:** Accidents at Crossings—Contributory Negligence Per Se. The plea of contributory negligence *per se* on the part of one who was killed upon a railway crossing cannot be sustained when the record is such that the jury would be justified in finding, *inter alia:*

1. That, when the deceased drove upon the crossing, the crossing gates were *open*, and that an *opening* had also been made at the crossing in a freight train on a passing track.

2. That, without warning signals, the defendant, at the time

in question, ran its train over the crossing at the rate of at least
80 feet per second.

3.  That the deceased was killed within less than three seconds
after he had passed objects which obstructed his view, and after
he had thereby discovered his peril.

*Appeal from Pottawattamie District Court.*—EARL PETERS,
Judge.

DECEMBER 31, 1920.

OPINION ON REHEARING DECEMBER 15, 1922.

ACTION at law, to recover damages for the death of Philip
James Corbett, deceased.  There was a verdict and judgment
for plaintiff, and the defendant appeals.—*Affirmed.*

*Hughes, O'Brien & Taylor* and *C. R. Sutherland,* for ap-
pellant.

*H. L. Robertson* and *John M. Galvin,* for appellee.

WEAVER, J.—On May 18, 1918, Philip James Corbett, a boy
16 years of age, was killed by defendant's train upon a street
crossing in the town of Neola, Iowa, and this action was brought
to recover damages in behalf of his estate.  There was a judg-
ment for the plaintiff, and defendant appeals.  Upon the orig-
inal submission of the appeal, an opinion was handed down
reversing the judgment below.  180 N. W. 690.  A petition for
rehearing was thereafter sustained, and the cause was resub-
mitted, with additional arguments by counsel on either side.  A
somewhat minute description of the scene of the accident will
aid materially in arriving at the merits of the case.

The defendant's railway extends east and west through·
the town of Neola, and through the middle of Blocks 26, 27, 28,
29, and 30 (numbering from west to east) upon the town plat.
Along this course are three parallel tracks, the middle one of
which is the main track; the one on the south is a passing track;
and the one on the north is known in the record as the "north

track.'' Extending east and west along the north side of these blocks is Front Street, which is intersected by Second Street, extending north and south between Blocks 29 and 30. As will be seen, Second Street crosses the three tracks of the railway at right angles, midway of the blocks last named. Fourth Street is parallel to and next west of Second. As one goes east from Fourth Street on Front Street to Second, and turns south to the railway crossing, there is a large livery barn on the corner to his right. This barn, with an added ''lean-to,'' occupies the entire space between Front Street and the railroad right of way, a distance of 76 feet, and extends along Front Street to the west, 80 feet. From the southeast corner of the barn to the north rail of the north track is 8 feet, 4 inches; and from the same corner to the north rail of the main track is 18 feet, 11 inches; and allowing 4 feet, 8 inches, for the standard gauge of the north track, there is left between the two tracks, north and main, a space of but 5 feet, 11 inches. Moving south on Second Street, the driver of an automobile could not see along the railway track to the west until he reached a point where, from the seat of his car, he could get a view past the barn, variously estimated at from 24 to 35 feet north of the main track. There were also one or more idle freight cars on the north track to the right, adding something to the screen in that direction. The crossing was guarded by a watchman and gate; but, as we understand the record, these were employed during the daytime only.

The deceased was the employee of one Miller, agent in charge of the local Standard Oil station, and as part of his duties drove an oil truck, and frequently passed over this crossing. On May 12, 1918, deceased and Miller drove an auto into the country south of Neola, on a fishing excursion. As they returned, early in the evening, a freight train was coming into the station on the south or passing track. To avoid this obstruction, they turned west to Fourth Street, and thence north over the railway crossing ahead of the freight train, and then to Miller's home. Leaving Miller there, the boy, with a companion, one Burns, drove east on Front Street, intending to turn south on Second. As they reached the corner, deceased stopped his car, or slowed it down sufficiently to let Burns

alight, and then proceeded southward toward the crossing, at a speed variously estimated at from 10 to 15 miles per hour. According to two witnesses, he slowed his speed as he approached the tracks, but he does not appear to have stopped. It was not yet dark; the crossing gate was open; and the freight train on the south track was cut in two, and an opening made for passage along the course of the street. Deceased, continuing his progress south, had nearly crossed the main track, when the rear part of his car was struck by the engine of a passenger train, moving eastward at a speed estimated at from 50 to 60 miles an hour. The force of the collision was such as to throw the auto clear of the track, and Corbett was instantly killed. In this action to recover damages, the defendant is charged with negligence in operating its train over the crossing at a dangerous rate of speed, and in failing to give the usual warnings of its approach. As said by us on the former hearing:

"The sufficiency of the evidence to carry these issues to the jury is not questioned. The sole contention of appellant is that the evidence conclusively established contributory negligence on the part of decedent."

We shall, therefore, limit our consideration to the single inquiry whether the case made by the plaintiff justified the trial court in submitting this issue to the jury.

I. To answer this question in the affirmative, it is not necessary to find that deceased exercised the highest degree of care. It is sufficient if, from all the proved facts and circumstances, the jury could fairly find that he acted with the care and prudence which may reasonably be expected from the ordinary person of his age, experience, and capacity. With this general rule in mind, let us consider the leading circumstances relied upon by the appellee to sustain the action of the trial court in refusing to direct a verdict for the defendant. They may be enumerated as follows: (1) The youth of the deceased, who cannot be charged, as a matter of law, with the duty of exercising a greater degree of care, prudence, or judgment than is possessed by the average boy of his age and experience, under like circumstances. (2) The fact that he was not a trespasser, but was exercising the common right of a member of the public upon the highway. (3) The conceded fact that, as he moved

east on Front Street and south upon Second, and until he was
almost upon the track, his view to the southwest was completely
obstructed by the buildings on the north half of the block. (4)·
That this obstruction was increased by detached cars on the
north track. (5) That the obstructions had a natural tend-
ency to deflect the waves of sound coming from the approach-
ing train, and to lead to a mistake as to their true direction
and distance. (6) The absence of proper signals of the ap-
proach of the train tended to deceive and mislead the deceased.
(7) That the crossing gate was open and gave silent assurance
of safety. (8) That the opening of the freight train on the
south track for the crossing was an invitation to its use. (9)
That the sudden plunging of the train through the yard at such
extraordinary speed may well have served to frighten and tem-
porarily incapacitate the boy for the exercise of the highest de-
gree of judgment. (10) That he had the right to place some
degree of reliance on the railroad company's observance of its
duty to operate its train over the crossing with due regard to
the safety of others rightfully using the highway. Without pro-
tracting this opinion to discuss all of these propositions sev-
erally, it may be said that all are matters having a natural and
pertinent relation to the question of reasonable care in the prem-
ises. The conclusion is not to be found by fixing our minds
on any one fact or circumstance and saying that, because thereof,
reasonable and fair-minded men cannot disagree upon the proper
verdict. It is to be reached, rather, by a comparison and weigh-
ing of all the testimony, by linking circumstance with circum-
stance, by deductions and inferences fairly to be drawn from
the entire case, viewed in the light of the common knowledge
and common experience of mankind; and this, under all or-
dinary conditions, is the exclusive province of the jury.

II.   There are two or three features above mentioned which
we think should be given special attention. Among these is the
undisputed fact that, as deceased approached the tracks, the
crossing gate on the main track and the freight train on the
south track were both open, apparently indicating a safe pas-
sage for the use of travelers on the highway. As deceased
approached the crossing, seeing this open way and hearing no
signal or warning from the train, it would not be an unnatural

assumption on his part that he could safely proceed. Moreover, knowing, as he must, that the divided parts of the freight train were liable at any time to close the gap, preparatory to moving onward, ordinary care on his part would require some attention to that possibility. If all those circumstances should appeal to the minds of the jury as tending to show that the deceased was not guilty of contributory negligence, we think it would not be within the province of the court to overrule such conclusion.

III. The concession that the jury could properly find that defendant did operate its train over the crossing at excessive or reckless speed, and without giving the proper warning signals, has an important bearing, not alone as showing defendant's negligence, but also upon the question of contributory negligence. It is not a sufficient answer to this suggestion to say that, even if defendant was negligent, deceased was still bound to use reasonable care for his own safety. That proposition is sound. But is it negligence, as a matter of law, on the part of the public or the individual in lawful use of the crossing, to place some degree of reliance on the assumption that the railway company will obey the law and observe due care in its use of the same crossing? That question has been answered in the negative by this court, over and over again. If the crossing be open and unobstructed, and the approach of trains thereto is in plain sight to a traveler making reasonable use of his senses, and he blindly goes ahead into an obvious danger, and is injured, he cannot complain if he is held chargeable with contributory negligence. The chief office of required signals is to give timely warning, where the situation is such that, without them, the traveler is liable to be entrapped, to his injury. Directly in point is the comparatively recent case of *Case v. Chicago G. W. R. Co.*, 147 Iowa 747, 751, in which the opinion was written by the late Justice Deemer. In its essential fact features, it is quite like the case at bar, the material differences, if any, being largely in favor of the defendant. There, as here, the approach to the crossing was screened by buildings along the street side, until the traveler was within 15 or 20 feet of the track, though from a point 17 feet farther away, the track was visible for 477 feet. As plaintiff approached the crossing, he slowed down his team, and proceeded to cross the track. There,

as here, there was no watchman or flagman, and before plaintiff's wagon was fully over the track, it was struck by a train, approaching without the usual warning signals. There, as here, the defendant relied upon its claim of contributory negligence. Having discussed the facts, the opinion, referring to the matter of contributory negligence, and conceding the duty of the traveler to exercise reasonable care for his own safety, says:

·     "But one about to cross a railway track *has the right to assume that trains will not be run at an unlawful rate of speed; that the usual and customary warnings will be given; and that the railway company will comply with its duty in approaching street crossings.*"

It would be quite impossible to apply the law of that precedent to the instant case and at the same time hold that the trial court erred in submitting the case to the jury. The same rule has been affirmed and applied in *Wilson v. Chicago, M. & St. P. R. Co.,* 161 Iowa 191, 192; *Rupener v. Cedar Rapids & I. C. R. & L. Co.,* 178 Iowa 615, 618; *Cummings v. Chicago, R. I. & P. R. Co.,* 114 Iowa 85, 88; *Moore v. Chicago, St. P. & K. C. R. Co.,* 102 Iowa 595, 599, 600; *Burnett v. Chicago, M. & St. P. R. Co.,* 172 Iowa 704; *Dieckmann v. Chicago & N. W. R. Co.,* 145 Iowa 250, 271; *Gray v. Chicago, R. I. & P. R. Co.,* 160 Iowa 1; *Platter v. Minneapolis & St. L. R. Co.,* 162 Iowa 142; *Marnan v. Chicago, R. I. & P. R. Co.,* 156 Iowa 457, 463; *Mackerall v. Omaha & S. L. R. Co.,* 111 Iowa 547; *Davitt v. Chicago G. W. R. Co.,* 164 Iowa 216; and many other cases not cited.

As indicating the general trend of all the authorities on this point, see, also, *Henry v. Cleveland, C. C. & St. L. R. Co.,* 236 Ill. 219 (86 N. E. 231); *Virgin v. Lake Erie & W. R. Co.,* 55 Ind. App. 216 (101 N. E. 500); *Nilson v. Chicago, B. & Q. R. Co.,* 84 Neb. 595 (121 N. W. 1128); *Ernst v. Hudson River R. Co.,* 39 N. Y. 61; *Beisiegel v. New York C. R. Co.,* 34 N. Y. 622; *Wiggin v. Boston & M. R. Co.,* 75 N. H. 600 (75 Atl. 103); *Galveston, H. & S. A. R. Co. v. Eaten* (Tex. Civ. App.), 44 S. W. 562; *Pittsburgh, C. C. & St. L. R. Co. v. Terrell,* 177 Ind. 447 (95 N. E. 1109); *Hendrickson v. Great N. R. Co.,* 49 Minn. 245 (51 N. W. 1044); *Pennsylvania.R. Co. v. Weber,* 76 Pa. St. 157; *Boyden v. Fitchburg R. Co.,* 72 Vt. 89 (47 Atl. 409); *Ray v. Hines* (Wash.), 203 Pac. 929.

In no state in the Union is the rule of contributory negligence more rigidly enforced against the injured party than in Pennsylvania. Even there, however, it has been said, concerning the alleged negligence of a plaintiff led into a place of danger by failure of the trainmen to give the proper warning, that:

"The measure of ordinary care is so variable that the question of negligence becomes usually and peculiarly a function for the jury, and the courts can but rarely declare a particular act to be conclusive evidence of negligence."

See *Weber* case, supra.

. In the *Hendrickson* case, supra, the Minnesota court, quoting the rule so stated, adds that:

"This situation or position became dangerous, not by the simple act of Mr. Hendrickson in driving there, but through the neglect of defendant's servants to give the warning signals as required by law, in season to prevent his near approach."

Again, it has been said by the Pennsylvania court:

"If there was no notice by blowing the whistle, a thing required to be done before reaching the point, and usually done, a traveler accustomed to expect this would not only not be so likely to look out for danger or be in such a preparedness to avoid it as he otherwise might have been, and this, without any culpable negligence on his part. For if by the negligence or omission of those in charge of the train his vigilance was allayed, they are not at liberty to impute the consequence of their acts to his want of vigilance, a quality of which they deprived him." *Pennsylvania R. Co. v. Ogier*, 35 Pa. St. 60, 71.

Now if, with this statement of the law by the most conservative court in the United States, we compare our own declaration in *Case v. Chicago G. W. R. Co.*, 147 Iowa 747, 751, above quoted, as well as in our many other precedents to the same effect, it would seem to demonstrate beyond reasonable doubt that the question of contributory negligence in the instant case was for the jury.

IV. Of the other points worthy of special mention, we will extend the opinion to speak of but one. Neither court nor jury would be justified in holding the deceased chargeable with contributory negligence without first taking into consideration the suddenness of the peril in which the lad found himself, and the

almost instantaneous character of the fatal collision. As we
have seen, the surroundings were such that deceased could not
see to the west to any considerable distance until he was prac-
tically upon the track. According to the showing made by the
defendant from subsequent measurements, it was but 18 feet
11 inches from the barn to the main track. As deceased passed
the barn, the greatest distance he could see to the west, accord-
ing to the defendant, was 219 feet 5 inches, and when within
30 feet of the tracks, was 118 feet, or 75 feet from a point 5 feet
farther north. The jury could have found that the train, a
double-header, came on without signals, at a rate of 50 to 60
miles an hour, or 80 to 88 feet in a single second of time, and
would cover the entire distance of 219 feet in less than 3 seconds.
It is certainly a rare individual who possesses such perfect
coolness and self-possession, such judgment and mental alert-
ness, that he can successfully extricate himself from such dan-
ger. All persons are not constituted alike; and the fact that
one may recognize a threatened danger more quickly and act
more promptly than another to avoid it, does not establish, as
a matter of law, that the latter is negligent.

In *Moore v. Maine C. R. Co.*, 106 Me. 297 (76 Atl. 871),
the court, speaking of such a situation, says:

"Even if, after he [plaintiff] had found himself in a posi-
tion of danger, he had mistakenly concluded that the safest
course would be to try to cross the track, and so came nearer to
the track than he otherwise would, that would not necessarily
have been negligence. Negligence is the want of that care which
ordinarily prudent men use in the same circumstances. And
even ordinarily prudent men, when they are caught in a trap,
and must act instantly, miscalculate and misjudge."

In *Sherwin v. Rutland R. Co.*, 74 Vt. 1 (51 Atl. 1089),
answering defendant's insistence that plaintiff was guilty of
contributory negligence because, when within 12 feet of the
crossing, he could see or ought to see a car moving down upon
the crossing, the court says:

"This we cannot do. The question calls for a consideration
of *the speed of the car, the time in which the traveler has to
consider and act,* and what prudent men do in like circum-
stances; and is one upon which intelligent and fair-minded men

might reasonably differ. Therefore the case, in so far as it depended upon the question of whether the plaintiff, by the exercise of due care, could or ought to have seen the car in season to have avoided the accident, was fairly for the jury.''

See, also, *Myers v. Chicago, B. & Q. R. Co.*, 152 Iowa 330, 337, where we said of a person finding herself in sudden peril that:

''What a person so situated and exposed to the menace of an on-coming train, with alarms sounding, in the exercise of ordinary prudence should have done, was for the jury to say.''

An instructive illustration at this point is found in *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509, where the deceased was killed upon a crossing, in the approach to which he had several opportunities to view the track, but was evidently misled by the fact that the train was approaching at an unlawful speed. After describing the situation, the opinion proceeds:

''We meet the inquiry whether Berger is to be conclusively adjudged to have been guilty of contributory negligence, or was that issue for the jury? The additional facts should be stated: (1) The train was moving at a speed of 20 to 35 miles an hour; the automobile, 10 to 15 miles an hour. (2) One Oswald drove over the crossing, about 15 feet ahead of decedents, and, after crossing, motioned in warning. If the automobile was moving at 15 miles an hour, this would be 66 feet in 3 seconds; if at 10 miles an hour, 14.6 feet a second,—65.7 feet in 4½ seconds. This is mentioned to indicate how brief a time the automobile required in moving to the crossing, after decedents might have looked up the track 220 feet, and have seen no train approaching. Might they have taken into consideration, then, that a train, if approaching, might not lawfully exceed in speed 6 miles an hour? The court has repeatedly so held, as seen; and, if that might be so done, what weight is to be given this circumstance? Are former decisions to rule, especially *Davitt v. Chicago G. W. R. Co.*, 164 Iowa 216, where reliance on warnings required by law, not sounded, was held to excuse for not looking within 100 feet? Might decedents have proceeded for 3 or even 4½ seconds without looking for a train again? Or, if they did so, must they be denounced as conclusively negligent; or should that issue be left to the jury? Reasonable

minds might differ in answering this inquiry, and for this very reason this court ought not to assume to say that the issue is not fairly debatable, under the evidence in this case.''

If, then, as we hold in the cited case, an opportunity of 4½ seconds to escape a sudden and imminent peril is not sufficient to charge the victim with contributory negligence as a matter of law, in failing to escape it, surely the opportunity here shown, of less than 2 seconds, should not be held to conclusively impose such fearful responsibility upon the deceased in this case.

Further discussion, perhaps already too greatly prolonged, is unnecessary. The case, as submitted, presents the single question whether the trial court erred in submitting to the jury the issue of contributory negligence. For the reasons stated, we think the inquiry must be answered in the negative, and the judgment appealed from is, therefore,—*Affirmed.*

Stevens, C. J. (specially concurring.) I concur in the result reached in the foregoing opinion upon the sole ground that the evidence was sufficient to carry the question of contributory negligence to the jury.

Evans, Preston, Arthur, and Faville, JJ., join in this special concurrence.