McCORMICK HARVESTING MACHINE COMPANY v. P. T. McNICHOLAS.[1]

December 7, 1896.

Nos. 10,265—(103).

**Sale—Warranty—Waiver.**
Evidence considered, and *held* that the trial court did not err in refusing to direct a verdict for the plaintiff.

**Same—Damages—Instructions.**
Other unimportant assignments of error considered, and *held* to be without merit.

Appeal by plaintiff from a judgment of the district court for Meeker county, in favor of defendant, after a trial before Powers, J., and a jury. Affirmed.

*Brown & Buffington,* for appellant.
*Peterson & Foster,* for respondent.

START, C. J. This is an action on a promissory note for $40 given, with others, in payment of the purchase price of a harvester and binder sold by plaintiff to defendant. The answer admitted the note, and set up a counterclaim for damages arising from a breach of

[5] G. S. 1894, §§ 3430-3435.     [1] Reported in 69 N. W. 36.

warranty of the machine.    Verdict and judgment for $12.20 in favor
of the defendant.    The plaintiff appealed from the judgment.

The first assignment of error is to the effect that the trial court
erred in refusing to instruct the jury to return a verdict for the
plaintiff for the amount of the note.    The second one is "that the
court erred in holding that the plaintiff had waived a return of the
machine."    Both may be considered together, as each involves an
examination of the contract of warranty and the evidence.    The orig-
inal printed warranty was as follows:

"These machines are all warranted to be well made, of good ma-
terial and durable with proper care.    If upon one day's trial the
machine should not work well the purchaser shall give immediate
notice to said McCormick Harvesting Machine Company, or their
agent, and allow time to send a person to put it in order.    If it
cannot then be made to work well, the purchaser shall return it at
once to the agent of whom he received it, and his payment (if any
has been made) will be refunded.    Continuous use of the machine, or
use at intervals through harvest season, shall be deemed an accept-
ance of the machine by the undersigned."

At the time of the sale, and as a part of the warranty, the agent
making the sale indorsed upon the back of it the following written
agreement:   "Said company agrees to see said harvester to do its
work and all fixtures free of charge the first year."

There was no claim made by the defendant that the machine was
not well made, of good material, and durable, with proper care, but
the claim was that, by reason of its defective construction (the precise
defect does not appear from the evidence), the binder attachment
would clog, and could not be made to work, and was worthless.    The
agent who sold the machine saw it work the first season, and testified
"that it did not work very good; ´ *   *   * it kept clogging right
along."    The evidence is practically undisputed that there was a
breach of the warranty in this respect during the first harvest after
the machine was purchased; that it would not work; that the plain-
tiff had notice of the defects, and its agent promised to send an expert
to remedy them.    It was not done, but the defendant never returned
the machine.

It is also undisputed that the defendant refused to give his notes
for the machine, and thereupon, and in November, 1893, the parties
entered into an agreement whereby the defendant gave his notes,

66 M.—25

antedated September 1, 1892, for the purchase price of the machine. The testimony of the defendant was to the effect that he gave the notes upon the consideration and condition that the plaintiff would make the binder do good work, and that such was the agreement. The agent of the plaintiff, with whom this subsequent arrangement was made, admitted and stated in his testimony that the defendant told him that he had trouble with the binder, and that he did not want to settle for it; that he (the agent) told him that, if there was any trouble with the machine, the company would fix it, and make it all right at any time; that the company always guarantied their machines to work, and they would fix his; that the defendant said something about his son getting repairs to fix the machine, and that when he was assured that he would get all of the broken and defective parts he was willing to give his notes. Upon his cross-examination he testified: "I told Mr. McNicholas that I would send an expert to see that it worked all right next season, if he wanted one. I told him I would give him the extras, so that the boys could put them on. He did not tell me to do it." The extras referred to were furnished, but from the evidence it does not appear that they were for the binder attachment. The evidence justifies the inference that they were for the harvester proper.

The evidence on the part of the defendant tended further to show that the plaintiff, after the making of the notes, never attempted to make the binder work, and never paid any further attention to it, and that the binder would not work the second season, and was practically useless. The defendant did not notify the plaintiff the second year that the binder would not work. An expert gave evidence on behalf of the plaintiff, explaining the mechanism of the binder; that it contained devices under the control of the operator to change its adjustment and prevent its clogging.

The plaintiff claims that a verdict in its favor should have been directed because the defendant did not return the machine, and, further, that the failure of the binder to work was due to improper handling of the machine by the defendant. As to the first claim, it is sufficient to say that by the subsequent agreement of the parties, which was the consideration for the giving of the notes, a return of the machine was waived. The plaintiff, by this agreement, was to make the binder work. It then had notice that the binder would not

work. As to the second claim, it was a question for the jury under the evidence.

The trial court instructed the jury that if it was the fault of the defendant that the machine did not work, or if the plaintiff, on account of any acts of the defendant, was prevented from making it work, then he could not recover on his counterclaim. In this connection the court further said to the jury: "If he has carried his part of the contract out, has given the company notice, and has given them a fair opportunity to repair it, and make it work, * * * so that it is the fault of the company, why he then should recover whatever his damage is." The giving this last instruction is the basis of the plaintiff's third assignment of error. The specific objection here made to this instruction is that it withdrew from the consideration of the jury everything except the matter of notice and fair opportunity to fix the machine. But it is to be read in connection with the previous instruction, wherein the question whether it was the fault of the defendant that the machine did not work was left to the jury. The instruction complained of was not error, when taken in connection with what preceded it. If the previous one was not sufficiently specific in the opinion of the plaintiff's counsel, he should have asked for further instructions on the point.

The last alleged error is that the court erred in charging the jury that, if defendant was entitled to anything on his counterclaim, he was entitled to the value of a new binder entire. The instruction was justified by the evidence, which shows that the machine consisted of a harvester and a binder attachment; that the binder could be taken off, and the harvester remain intact; and that any other binder of the plaintiff's manufacture could be used with the harvester, and that the cost of a new binder was $50. There was no evidence in the case justifying a finding that the failure of the binder to work was due to defects in any particular part thereof which could be replaced, and the binder thereby made to work. On the contrary, the plaintiff claimed that the binder was in perfect condition, but that the reason it did not work was because the defendant did not properly operate it.

This case was set down for oral argument in violation of the rule, therefore no statutory costs are to be taxed.

Judgment affirmed.