ALEXANDER R. BROWN v. NAMON C. RADEBAUGH and Another.[1]

November 15, 1901.

Nos. 12,719—(54).

**Assignments of Error.**

Several assignments of error made upon appeal in an action for libel considered and disposed of. *Held*, that there was no error in the rulings of the court questioned by these assignments.

**Libel—Privileged Communication.**

*Held*, further, that the court did not err in submitting to the jury in this case, as questions of fact. the privileged character of certain communications of the libel complained of, made by defendants to their niece and to plaintiff's mother.

Action in the district court for Hennepin county to recover $5,000 for libel. The case was tried before Harrison, J., and a jury, which rendered a verdict in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Erwin, Ferree & Mead*, for appellant.

The receipt containing the libel was not privileged communication and the question should not have been submitted to the jury. Quinn v. Scott, 22 Minn. 456. A corresponding interest or duty in the person to whom the communication is made is essential.

[1] Reported in 87 N. W. 937.

Bailey v. Holland, 7 App. Cas. (D. C.) 184; Norfolk v. Davis, 12 App. Cas. (D. C.) 306; Hosmer v. Loveland, 19 Barb. 111, 116; York v. Johnson, 116 Mass. 482; Krebs v. Oliver, 12 Gray, 239; Byam v. Collins, 111 N. Y. 143; Over v. Schiffling, 102 Ind. 191, 193. The defense of privilege must be pleaded specially. Malice must be specially denied or lack of malice pleaded. McKnight v. Hasbrouck, 17 R. I. 70; Hawkins v. Globe, 10 Mo. App. 174; Hess v. Sparks, 44 Kan. 470; Goodwin v. Daniels, 7 Allen, 61; Comerford v. West End, 164 Mass. 13. Instructions must be limited to the pleadings and the evidence based thereon. Gilmore v. Litzelman, 41 Ill. App. 541; Republican v. Miner, 12 Colo. 77; Trebby v. Transcript Pub. Co., 74 Minn. 84; Snyder v. Andrews, 6 Barb. 43; Kiene v. Ruff, 1 Cole (Iowa) 483; Monson v. Lathrop, 96 Wis. 386; I. & G. N. Ry. Co. v. Leak, 64 Tex. 654.

*John H. Steele*, for respondents, cited: State v. Levy, 23 Minn. 104; Stone v. Quaal, 36 Minn. 46; Hagan v. Hendry, 18 Md. 177, 191; Bradley v. Heath, 12 Pick. 163; Traynor v. Sielaff, 62 Minn. 420; Townshend, S. & L. (3d Ed.) § 209.

COLLINS, J.[2]

This was an action for libel, in which the verdict was for defendants. Ten assignments of error are set forth in the brief, some of which need no consideration.

1. By the first, counsel question a ruling of the court whereby it refused to strike out part of the testimony of the witness Loveland, to the effect that the only feeling exhibited by any of the parties to this controversy when the matter was being talked over the day before the publication of the alleged libel seemed to be one of regret. The statement was volunteered by the witness, but he had, in substance, stated it before, and he repeated it after the motion to strike out was made. It did not affect the case, not only for the reason above given, but from the fact that it was apparent from the evidence that all of the parties to the conversation to which the witness listened shared in the feeling that the affair was deplorable and much to be regretted.

[2] BROWN, J., took no part in this case.

2. It was conceded at all times by plaintiff that defendants' boy had given to him a part of the money and had shown him the dollar taken out of the drawer on the day of this conversation, and had offered to give it to him. The only dispute was whether he took this particular dollar from the boy. The court below held that testimony as to what defendants' boy told his father just prior to the conversation with plaintiff and his mother was admissible on the question of defendants' malice. Whether right or wrong in this ruling, it is obvious that what the boy told his father in respect to his disposition of the money which he had taken was not harmful to plaintiff's case, for plaintiff admitted that he had received a part of it.

3. We refer now to the fourth and fifth assignments of error. The matters embraced in the rulings complained of were discretionary with the court, and we cannot agree with counsel in their claim that the court abused this discretion when allowing defendants' son to testify. From the preliminary examination, we think the boy qualified, and that he understood the nature of an oath. His testimony may not have had the same force with the jury as the testimony of an adult, because of his youthfulness, but, judging from what he said, he was intelligent and observing. A sound discretion is to be exercised by the court in such cases. Nor did the court abuse its discretion in allowing an amendment to the answer of defendant Callista Radebaugh. This amendment was perfectly proper and permissible, and had been acted upon all through the trial.

4. Waiving all questions as to sufficiency of the exceptions upon which counsel base their sixth and seventh assignments, it was plainly their duty to prepare instructions, if they desired any application of the definition of malice to the facts disclosed by the evidence in this case. This is also true with respect to the issue as to the privileged character of the communications made to defendants' niece and plaintiff's mother. If the charge on these matters was not sufficiently comprehensive, counsel could not rely upon the mere assertion to that effect. The practice in this regard is well settled. McCormick Harvesting Mach. Co. v. McNicholas. 66 Minn. 384, 69 N. W. 36.

5. This brings us to the material questions in the case,—those raised by the eighth and ninth assignments of error, whereby it is claimed the court erred in submitting to the jury any question as to the privileged character of the communications made to defendants' niece and to plaintiff's mother.

The facts were that the plaintiff, a boy of fifteen years of age, was accused of stealing money from the drawer in a small grocery store kept by defendant N. C. Radebaugh. The information as to the commission of this offense came to defendants through their son, before referred to, seven years of age. Although this money was actually taken by their son, defendants claimed that he was incited to the deed by the plaintiff, who unquestionably shared in the spoils. The latter admitted that he purchased various articles with the money after it was given to him by young Radebaugh, but denied that he thought it was stolen, and, on the contrary, insisted that he believed the younger boy, who, according to his testimony, told him that the money in his possession was a gift from his father. Probably the jury came to the conclusion that the older boy was an accessory before the fact; that he influenced the younger and caused him to commit the thefts; and there was an abundance of testimony to justify this view of the case. No one could read the evidence of plaintiff himself and believe that he was an innocent victim of a boy half his age.

It appeared that as soon as the thefts were discovered, and their boy had told the circumstances, defendants sent for the plaintiff, and had a conversation with him, in which he denied any knowledge that the money was taken improperly, but told how and where he had spent a part of it,—all but a dollar taken that day. This conversation was at defendants' store. Soon after his mother came in and took part in the conversation, which was all in good feeling, and with a desire to do what was best for the boys. After discussing the matter at length she went to her own house, near by, procured the money, and, returning to the store, paid the amount which it was known had been taken from the drawer to Mr. Radebaugh. There was no ill feeling manifested up to this time. The next day she went back and demanded a receipt for the sum paid, and was informed by Mr. Radebaugh that if he gave a

receipt he would have to state the facts, and what it was for. The mother insisted upon a receipt, and Mr. Radebaugh then dictated a form to be used to his wife, who wrote out the original, signed her husband's name thereto, and made a copy for herself. She then called her niece, a member of her family, to assist in comparing the writings; and when this was done she delivered the original to plaintiff's mother, his natural guardian, his father having been dead a number of years.

This receipt was libelous upon its face. Its exhibition to the niece and delivery to the mother are the publications complained of. In its charge the court below submitted, as questions of fact for the jury to pass upon, whether or not the publications to the niece and to the mother were privileged communications, within the definition laid down in G. S. 1894, § 6505, which is as follows:

"A communication made to a person entitled to, or interested in, the communication, by one who was also interested in or entitled to make it, or who stood in such a relation to the former as to afford a reasonable ground for supposing his motive innocent, is presumed not to be malicious, and is called a privileged communication."

Counsel insist that it was error to submit the question at all, for two reasons: First, that no such defense was pleaded in the answer; and, second, that the publications were not privileged, as a matter of law, and that this should have been the instruction. As to the position of counsel based upon the insufficiency of the answer, it is sufficient to say that the objection made to the submission of this question to the jury was not on the ground that such a defense was not pleaded in the answer, but because the court itself should dispose of it as a question of law. This is very clear from that part of the exception found in the following words:

"I except to that as an improper question, improperly submitted to the jury,—as to whether this was a privileged publication. There being no dispute as to the facts, the court should have decided as to whether it was privileged or not."

To have the benefit of this point, counsel should have called attention to the defect in the answer, if defect there was, about

which we express no opinion. We think it was perfectly competent to submit to the jury the question of the privileged character of both communications.

Mrs. Radebaugh called upon her niece, who was certainly interested in the affair, as a relative and member of defendants' family, to compare the writing, the day after the conversation and the supposed amicable settlement. Why did not these facts make it proper for the jury to say that this conversation was made upon an occasion which rebutted the presumption of malice; that the niece stood in such a relation to the defendants and the circumstances were such as to afford a reasonable ground for supposing their motives innocent when the contents of the writings were disclosed? So it was when the writing was handed to the mother. It was a much more formal assertion of the culpability of her son than had been orally communicated the day before. But, if there was any foundation whatsoever for the truth of the statement, a reasonable regard for the future training of the boy rendered it a perfectly proper subject for her information. She was certainly interested in it, if the welfare of her son in time to come was of any consequence to her, and it was executed and delivered by other persons equally as interested. The facts and circumstances made questions of fact, and it was for a jury to say whether there were reasonable grounds for supposing defendants' motives innocent, and whether the communications were made on occasions which rebutted the presumption of malice.

We are agreed that there were no errors committed on the trial which would justify us in setting aside the verdict. Substantial justice has been done, and the sooner the parties drop all thought of this unfortunate occurrence, and cease to ventilate it, in or out of court, the better it will be for the plaintiff and defendants' son, whose commission of boyish errors will soon be overlooked and forgotten if older persons let the subject alone.

Order affirmed.