ALLAN L. TRUAX v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE
RAILWAY COMPANY.[1]

April 24, 1903.

Nos. 13,411—(79).

### Railway Station—Proximate Cause of Injury.

A mail agent, while throwing a mail bag from a depot platform into a
passing mail car, lost his balance, and fell between the platform and the
train, being seriously injured. *Held,* that the motion of defendant for
judgment notwithstanding the verdict should have been granted upon the
ground that there was no evidence from which it could reasonably be
inferred that the alleged defect in the platform was the proximate cause
of the injury.

Action in the district court for Wright county to recover
$25,000 for personal injuries. The case was tried before Giddings,
J., and a jury, which rendered a verdict in favor of plaintiff for
$15,255. From an order denying a motion for judgment notwith-
standing the verdict and denying a motion for a new trial provided
plaintiff should consent to a reduction of the verdict to $10,000,
defendant appealed. Reversed, and judgment ordered for de-
fendant.

*Alfred H. Bright, J. H. Wendell* and *C. A. Pidgeon,* for appellant.
*Charles Butts,* for respondent.

LEWIS, J.

Respondent was a mail agent on an east-bound train which ar-
rived at the village of Kimball at nine o'clock in the evening of
July 21, 1901. The train was backed in on the side track for the
purpose of enabling a west-bound train to pass. Respondent left
his car, and, carrying a bag of mail weighing in the neighborhood
of thirty pounds, crossed over the main track ahead of the incom-
ing west-bound train, stepped upon the platform, and walked rap-
idly westward, with the intention of delivering the mail bag to
the station agent, whose duty it was to throw it into the mail car
of the passing train. As the train approached and slowed down,

[1] Reported in 94 N. W. 440.

the mail car passed plaintiff before he reached the agent, and, fear-ing his train would pull out and he would be delayed in getting back to his own car, he threw the mail bag into the passing mail car, but in doing so lost his balance, fell forward against the car, and rolled down between the platform and the train, and his right hand was run over and crushed, necessitating amputation. This action was brought to recover damages for the injury, and the liability of the company is based upon the charge that the founda-tion of three or four of the planks in the platform at the south-east corner of the depot had given way, permitting the planks to sag an inch and a half or two inches under the weight of a person walking upon their outer edge; that it was at this point where respondent threw the mail bag into the car, and that it was the sinking of the planks under him at that particular time which caused him to lose his balance and fall. Appellant defended upon the ground that at the time respondent was not acting within the line of his duties in leaving his car under such circumstances and attempting to deliver the mail bag into the car of the passing train; also, that he was guilty of contributory negligence; and de-nied that there was any substantial defect in the platform for which it could be held liable.

Conceding that the evidence was sufficient for the jury to deter-mine whether, under such circumstances, respondent was acting within the line of his duty as a mail agent, and whether he was guilty of contributory negligence in attempting to deliver the mail bag into the car of the passing train, instead of placing it in charge of the station agent, we are compelled to the conclusion that there is no evidence from which it can reasonably be inferred that respondent's fall and consequent injury were caused by the alleged defect in the platform. The case is surrounded with a great deal of uncertainty as to the exact place where respondent was when he threw the bag into the car. One witness testified on his behalf that he was standing at a point about sixteen feet east from the east line of the depot, near the outer edge of the plat-form, and that respondent passed near to him, and he judged he was about opposite the southeast corner of the depot when he threw the sack. The witness did not pretend to be accurate. It

was at nine o'clock in the evening. People were moving about on the platform, and respondent was walking directly west from the witness, so that it was not easy to judge of his exact position. Another witness testified that he was standing about eight or ten feet directly east of the southeast corner of the depot, and that he saw respondent walk rapidly along as the incoming train overtook him, and, as near as he could tell, was nearly opposite the door of the waiting room when he threw the mail bag.

Three witnesses testifying on behalf of appellant stated they were standing a short distance west of the bay window, and that when respondent threw the mail bag into the car he was about opposite that window, and almost immediately fell between the car and the platform. The insecure planks were located by respondent and another witness opposite the east line of the depot, and the bay window was about twenty feet west of that point. The platform was about fourteen inches above the track and the bottom of the mail car nearly two feet higher than the platform. The planks of the platform were ten inches wide, and placed upon joists at right angles to the tracks, and parallel with it. These joists were sixteen inches apart, and lay upon sills supported by uprights, and it was claimed that the ends of the outside joists which formed a joint upon the sill opposite the southeast corner of the depot had become decayed sufficiently to release the nails, so that two or three planks on each side of the joint would spring down at the outer edge an inch and a half or two inches when stepped upon. After the accident respondent was picked up at a point a few feet west of the bay window, where he was lying by the side of the track with his head to the east, and his right hand had been crushed by the passing wheels. If he fell at the point where the planks were loose, he was carried along by the train for a distance of twenty-five or thirty feet, and respondent claims that after he fell he was rolled over once or twice by the moving train before it stopped.

Soon after the accident, respondent said, in describing it, that he did not know how it happened; whether some one ran into him, or whether he stood too near the train and was struck by the rail

of the car.  At the trial he said he did not slip or stumble upon anything, and did not know what it was that caused him to lose his balance, until about two weeks after the accident, when, upon examining the platform, he discovered the loose planks, and that when stepped upon at the outer edge they would give under his weight.  His only method of connecting this condition of the platform with the accident was the fact that he found by stepping upon the planks he experienced a similar sensation to that which he felt after throwing the bag into the car.

If the evidence were sufficient to justify the jury in coming to a conclusion that respondent actually stepped upon the springy planks at the time he threw the mail bag, yet it does not necessarily follow that his fall was occasioned by that fact.  He was walking rapidly, with a burden of some thirty or thirty-five pounds, and in the act of throwing it into the passing car he would necessarily act quickly, and turn, as, according to the testimony, he did, towards the car, which effort would in itself tend to unbalance him, even though standing upon a solid foundation.  On the other hand, a person might, under such circumstances, safely have thrown the bag into the moving car, even though stepping upon the loose boards.  It would depend upon how rapidly he was walking, at what point he stepped upon them, how quickly he turned, with what force he threw the sack, and what effect the momentum acquired in so doing would have upon his movements.  Therefore, admitting he was at that point, it would be uncertain whether the mere springing of the planks one and a half or two inches at the outer edge would have anything to do with the result, for several different conclusions might be drawn from the evidence, viz.:  The respondent may have lost his balance by reason of his effort in attempting to throw the bag into the car without regard to the planks; or he may have stepped upon the boards at such a point and under such circumstances that his movements were not interfered with by their condition; or again, in his haste he may have misjudged the distance, and have unwittingly come in contact with the car by being too near the edge.

The most that respondent could claim is that it would be within the province of the jury to consider and weigh these conflicting

differences, and determine whether the conclusion contended for were reasonable and justified. But, in the absence of positive proof that the planks were actually stepped upon, and at a point where they gave way under the weight imposed upon them, the whole matter is left in the realm of pure conjecture. Verdicts based upon evidence of this character cannot be permitted to stand. There must be a definite and reasonable connection between the cause and effect. Juries are not permitted to speculate in arriving at a conclusion, however unfortunate the result may be for the injured person.

From the nature of the evidence and the care and detail with which it was collected and submitted, we are of the opinion that the motion for judgment notwithstanding the verdict should have been granted. So ordered.