## OTTO PETERSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 9, 1924.

No. 23,901.

**Whether statutory signals were given at highway crossing and whether giving them was sufficient, were questions for jury.**

Record examined in reference to collision between train and automobile at highway crossing and *held*:

(1) Province of jury, on conflicting evidence, to determine whether statutory signals were given.

(2) The question of contributory negligence was properly submitted to the jury.

(3) The court properly permitted the jury to determine from the character of the crossing and the physical conditions surrounding it that the defendant did not perform its whole duty by merely giving the statutory signals.

(4) That the court did not submit to the jury as an independent ground of negligence the presence of snow fence and trees on land outside the right of way.

(5) The general exception to the charge under the evidence, is insufficient.

Action in the district court for St. Louis county to recover $26,310 for injuries received in collision with defendant's train and for loss of automobile. The case was tried before Fesler, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $9,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*F. G. Dorety, A. L. Janes* and *Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Gannon, Strizich & Farnand,* for respondent.

WILSON, C. J.

This is an action to recover damages for personal injuries and destruction of an automobile resulting from a crossing accident.

[1]Reported in 199 N. W. 3.

The plaintiff was given a verdict for $9,000. From an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, defendant has appealed.

At the location of this crossing the railroad tracks run north and south and the highway east and west. The train was going south and plaintiff was traveling to the east in an automobile.

For about 345 feet north of the center line of the crossing the railroad passes through a cut which in its natural condition is from one to 7 feet deep. At the time, of the accident snow was on the ground, and at the crossing and on the right of way there were high snow banks which tended to make an additional obstruction to the view. This snow obstruction was in part the result of defendant's acts. On the west side of the track and on top of the cut and bank, in addition to snow, there were brush, stumps, telephone poles and a wire fence. Just to the north of the cut and on the west side of the right of way is a grove covering an area 185 feet north and south and 150 feet east and west. About 75 feet north is another grove along the westerly side of the right of way 275 feet north and south and 200 feet east and west. The north end of this grove is 1,025 feet from the crossing. On the land to the west of the right of way there is more or less brush and small timber and some brush on the right of way along the fence. The grade is down hill from the north to the crossing.

The east and west highway turns to the north at a point about 500 feet west of the crossing. From this turn, to the east, the grade is up hill to a point 100 feet from the crossing—the rise to this point being 16 feet— and then the surface is level for 70 feet, and then the last 30 feet is down-hill to the crossing. On the north side of the road and parallel to it was a snow fence erected by the township. It started 35 feet from the right of way and was 100 feet north of the center of the highway and extended westerly about 164 feet. This fence was 5½ to 6½ feet high and was made of boards 8 or 10 inches wide. There is also a cut in the highway as it leads to the tracks. There was snow along the snow fence, and from the east end of the snow fence and on the right of way were high banks of snow obstructing the view to the north to such an

extent, as plaintiff testifies, that when he was at a point just past the snow fence, and, as he was along by the fence, he could not have seen a train approaching from the north, unless its smoke could have been seen.

At the time of the collision plaintiff did not see the train until he was so close that he could not stop and so he tried to cross ahead of the train. The locomotive engineer did not see plaintiff until plaintiff was within 15 feet of the track, and also when the train was about 15 feet or 20 feet from the crossing. The engineer testified that he knew the crossing was a dangerous one, that he did not look to see if persons were traveling on the highway and that snow and the snow fence obstructed the view.

This action is based on negligence and it is claimed: (1) That defendant failed to ring the bell or sound the whistle; (2) that defendant was negligent in permitting snow to accumulate at the crossing so as to obstruct the view, and, because of the conditions natural and artificial, defendant owed plaintiff a duty which it violated in failing to take proper precautions to protect plaintiff.

If defendant failed to give the usual signal in approaching the highway crossing (G. S. 1913, § 8776), it would be guilty of negligence. There is evidence in this case on both sides in support of their respective claims. It was conflicting. It was clearly a question for the jury to determine. Their conclusion in that respect cannot be disturbed. Hendickson v. Great North. Ry. Co. 49 Minn. 245, 51 N. W. 1044, 16 L. R. A. 261, 32 Am. St. 540; Zenner v. Great North. Ry. Co. 135 Minn. 37, 159 N. W. 1087; Jenkins v. Minneapolis & St. L. R. Co. 124 Minn. 368, 145 N. W. 40.

The matter of contributory negligence in this case was also for the consideration of the jury. It does not conclusively appear that the colliding train must have been visible from the point where the traveler should have looked. The engineer seemingly could not see the automobile which plaintiff was driving and he had substantially the same opportunity to see it as plaintiff did to see the train. Reasonable men might readily differ as to what the facts were in reference to this phase of the case. The evidence warrants a finding that plaintiff exercised such precaution as a reasonably

prudent man would have exercised under similar circumstances and his contributory negligence was a question of fact, which was properly submitted to the jury, and decided by it adversely to defendant.

The most serious question presented by the appellant arises out of the charge of the court in reference to the second claim of negli-. gence presented by plaintiff. The court instructed the jury as to the law applicable to the alleged failure to give the statutory signal for the crossing, and then said:

"Now, with respect to the other point, as to the condition of the land, the lay of the land along the line of the east and west road from what we have referred to as the 'corner' up to the railroad track, over to the left as far as the railroad track, what was the condition of things there on March the 6th, on this afternoon? That is the time that you must consider. * * * What was the lay of the land? How much of a cut was there along the railroad track? How much of a cut was there along the highway? How were the trees? Where was the snow fence? Where was the brush? How much snow was there? How much snow bank? Was it snowing at that time? If, so, to what extent? To a person that is in plaintiff's position along that road, what could he have seen, if he had looked? What could he have heard, if he had listened? And a person coming down on that engine, because the engineer is the only one of the crew that is important now to consider, what could he have seen, if he had looked? What was there in the line of his vision? What were the facts with respect to all of these matters? * * * *"

"Engineers are charged with knowledge of the dangerous character of crossings due to topographical or other permanent conditions, and an engineer may act within reasonable limits, on the assumption that travelers approaching a crossing will exercise ordinary care for their own protection. * * * What could the engineer see, if he had exercised reasonable care as he approached the crossing? * * * Nevertheless, you should take into consideration all the time, as that human attitude of mind, what under the facts as you find them would a person of ordinary prudence and caution have done under those circumstances. * * * If the

engineer did what a person of ordinary prudence and caution would have done under such circumstances, the defendant is not negligent."

At the close of the charge defendant's counsel asked the court if he was submitting to the jury as ground of negligence all the allegations of the complaint, which he had not done, and the court answered:

"I am submitting two claims of negligence: One as to whether or not the whistle was blown and the bell rung; that is one. The other one is the question of negligence which arises under the claim of the plaintiff on account of the lay of the land on the north side of the highway from the turn to the railroad crossing and the country intervening between that highway and the railroad track to the north of it."

Mr. Mayall: "I wish to except to the submission of the latter ground."

Defendant now contends that the trial court took in too much territory and submitted to the jury the issues in such a way as to permit the jury to find defendant negligent because of existing conditions not on its own right of way and over which it had no control. The snow fence was not its property and not on its land. The two groves were outside the right of way. Of course it would not be liable because of the presence of the snow fences nor because of the presence of trees on the adjacent land. The majority of the court are of the opinion that the court did not submit to the jury the question as to whether defendant was guilty of negligence because of the snow fence or because of trees not on the right of way, or because of the lay of the land. These were mentioned only because they were some of the existing physical conditions which were to be considered by the jury as bearing upon the negligence of the respective parties as they approached the crossing.

The charge properly permitted the jury to determine from the character of this crossing and the physical conditions surrounding it that the defendant did not perform its whole duty to plaintiff by sounding the whistle and bell for the crossing. 22 R. C. L. 1013.

The lookout enables the trainmen to control the movements of the train when they discover danger. The giving warning is to give the traveler notice to keep out of the way, and the control of the speed is to make both the lookout and the warning more effective. It remained for the jury to say whether or not under the peculiar circumstances of the case the defendant was using reasonable care, even though it complied with the law in giving the statutory signals. Struck v. Chicago, M. & St. P. Ry. Co. 58 Minn. 298, 59 N. W. 1022; Hutchison v. St. Paul, M. & M. Ry. Co. 32 Minn. 398, 21 N. W. 212; 22 R. C. L. 989. There were high snow banks piled up on the right of way at the crossing tending to obstruct the view. This condition was within the knowledge of defendant and was, at least in part, the result of its own act, and was an element entering into the question of whether defendant was negligent. This was one of the issues and was included in the charge. The other elements were mentioned and certainly understood as simply bearing upon the question of care in operating the train, and upon the question of plaintiff's contributory negligence.

While counsel for defendant made a general exception to the charge, if he thought the charge was misleading or inaccurate, he should have been more specific in his exceptions or requests for a more explicit charge. Not having done so, the general exception will not avail him. Bowen v. St. Paul, M. & M. Ry. Co. 36 Minn. 522, 32 N. W. 751; McCormick H. M. Co. v. McNicholas, 66 Minn. 384, 69 N. W. 36; Applebee v. Perry, 87 Minn. 242, 91 N. W. 893; Brown v. Radebaugh, 84 Minn. 347, 87 N. W. 937; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; Schornak v. St. Paul F. & M. Ins. Co. 96 Minn. 299, 104 N. W. 1087; Kramer v. Northwestern Elev. Co. 97 Minn. 44, 106 N. W. 86; Mountain v. Day, 91 Minn. 249, 97 N. W. 883.

Order affirmed.

STONE, J. (dissenting.)

The result does not meet with my approval for two reasons: First, the evidence to my mind shows that as plaintiff passed the end of the snow fence on his way to the crossing there was a con-

siderable space through and over which he must have had an unobstructed view of the approaching train, if in fact he looked for it at all. Under the circumstances it was his duty to look, and to look at that point, because it was the only place where his view of the track to the north was unobstructed. I realize very well that this has to do with a matter of fact, but to me it has ceased to be a question, and the conclusion is established as indicated.

The other thing which prevents my concurrence is a very confident belief that the majority opinion misconstrues the charge and that no one will be more surprised by the construction here placed upon it than its learned author. To begin with, the complaint charges negligence in two respects. The first is the failure to give signals, and the second, in substance, is the maintenance of a crossing under such conditions that the view of persons about to cross is obstructed. There were no other claims of negligence. After the submission of the first one, the charge proceeds with the quotation made by the Chief Justice "with respect to the *other point.*" What was that "other point" unless it was the other claim of negligence?

The context shows that it was the claim made in the complaint, attempted to be proved by evidence, and argued by counsel, that the obstructions to vision, some on and some off the right of way, were the result of defendant's negligence.

Finally, it seems that the statement of Judge Fesler that he was "submitting *two* claims of negligence," and has explained only *two*, should put the matter at rest.

Certainly, he was not submitting any claim of negligence which was not within the pleadings.

Therefore, the second claim submitted must have been the very one which the majority here say was not submitted.

That court and counsel at the trial so understood the situation is indicated by the court's explanation of the charge and the exception of counsel for defendant which was "to the submission of the latter ground." "Latter ground" of what? Of defendant's negligence, of course. That is, if the majority opinion is correct, counsel

was excepting to the submission to the jury of a ground of negligence which we say was not submitted.

For the error of permitting the jury to hold defendant guilty of negligence because of conditions and obstructions off its right of way, I feel that there should be a new trial at least.

QUINN, J. (dissenting.)
I concur in the dissent of Mr. Justice Stone.