CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RY. CO. v. HEYDA.

No. 14355.

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1951.

945

Warren Newcome, St. Paul, Minn. (Lowell Hastings, Chicago, Ill., Gerald F. Fristensky and George H. Henke, St. Paul, Minn., on the brief), for appellant.

R. T. Rodenberg, New Ulm, Minn. (Streissguth, Berens & Rodenberg, New Ulm, Minn., on the brief), for appellee.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

Henry Heyda on August 16, 1950, at about 7:20 o'clock a. m., while driving his automobile southerly on Scott Street in the city of Shakopee, Minnesota, on his way from work, had the misfortune to collide with an eastbound passenger train of the Chicago, St. Paul, Minneapolis and Omaha Railway Company at the point where its main line track crosses the street at grade. Heyda was injured and his automobile was damaged. Attributing the accident to the negligence of the Railway Company, he brought this action for damages, asserting:

(1) that the speed of the train was excessive; (2) that no signal of the approach of the train was given; and (3) that his view was obstructed by a box car on a spur track. The defendant (appellant) denied that it was negligent and alleged that Heyda was guilty of negligence which either caused or contributed to the happening of the accident. Jurisdiction was based on diversity of citizenship and amount in controversy.

The case was tried to a jury. At the close of the evidence the defendant moved for a directed verdict upon the grounds that no actionable negligence on its part had been shown, and that, under the evidence, the plaintiff (appellee) was guilty of contributory negligence as a matter of law. The motion was denied and the issues of negligence and contributory negligence were submitted to the jury. There was a verdict for the plaintiff, upon which judgment was entered. A motion of the defendant for judgment notwithstanding the verdict was denied. This appeal followed.

The sole question for decision is whether the District Court misconceived or misapplied the law of Minnesota in ruling that the issue of contributory negligence was one of fact for the jury. The defendant asserts, in substance, that the evidence disclosed that Heyda had an adequate opportunity to observe the approach of its train and to stop his car in time to avoid a collision, and that, having failed to do so, he was guilty of contributory negligence as a matter of Minnesota law.

The defendant's main line track runs approximately east and west through Shakopee. Scott Street crosses it at a right angle, extending north and south. The street as platted is 80 feet wide, but only the east half is improved and used for travel. One city block north of defendant's main line track is First Street West (State Trunk Highway 169) which runs east and west and crosses Scott Street. In traveling south on Scott Street from First Street West, one first encounters two tracks of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company which cross the street at grade, are parallel to defendant's main track, and approximately 87 feet north of it. There is a railway freight station building on the west side of Scott Street between the Milwaukee tracks and the defendant's main track. The east side of the freight station is about 95 feet from the west boundary of the traveled portion of Scott Street.

Just south of the freight station is a spur track of the defendant running parallel to its main track. The spur track extends only to the west boundary of Scott Street as platted and is some 40 feet west of the traveled part of the street. At the time of the accident, a box car was standing at the east end of the spur track. The south side of the box car was 27 feet north of the center line of the defendant's main track. The defendant's passenger depot in Shakopee is just east of Scott Street, between its main track and the Milwaukee tracks. The plaintiff's residence was south of the defendant's main track and across from its passenger station.

The plaintiff was employed at Savage, Minnesota, which is about ten miles east of Shakopee. Since April, 1950, he had worked nights. He used his automobile in going to and returning from work, following the same route he was using on the day of the accident. He was familiar with the crossing and its surroundings. He had finished his work at seven o'clock in the morning of the day of the accident. He drove his automobile westerly until he reached the intersection of First Street West and Scott Street in Shakopee. He then turned to the south into Scott Street to cross the railroad tracks in order to reach his home. It was daylight and the visibility was good. There was no other traffic on the street. He was driving at about 15 miles an hour until he reached the Milwaukee tracks. Between those tracks and the main track of the defendant he was driving about 8 miles an hour and proceeded at that rate of speed. The brakes on his car were good. At the speed he was traveling he could have stopped within 2 feet. He testified that when he came to the Milwaukee tracks he looked right and left, but saw or heard no train. Using his own words: "As I came along the crossing to the box car [on the spur track south of the

freight station] I looked around the edge of it. I couldn't see anything. I didn't hear a train, whistle or bell. After I looked I kept going. I was going at the rate of 8 to 10 miles an hour. Then I got hit and from then on I don't know what happened. * * *" He also testified, on cross-examination, as follows: "In the distance between the Milwaukee tracks and the Omaha tracks I was traveling about 8 miles an hour. It was not raining. With no rain and under all the conditions present at that time, and at a speed of 8 miles an hour, I could have stopped my car in about 2 feet. There is a platform at the passenger depot which is maybe an inch or two higher than the street. I could have swerved my car to the left on the depot platform immediately before the collision if I had seen the train. I never did see the train at any time."

▇▇ Virtually the only dispute in the evidence was as to the speed of the train. The highest estimate given by any witness was 35 miles an hour, and the lowest was 15 miles an hour. The evidence would have sustained a finding that the speed of the train was slightly in excess of 30 miles an hour, or four times the speed of the automobile, assuming that to have been 8 miles an hour.

The evidence shows that, while the box car on the spur track north of the main track restricted Heyda's view to the west, he still had an opportunity to observe the approaching train before the collision occurred; that at a point 40 feet north of the center of the main track at the crossing, his view to the west was 168 feet; at 35 feet his view was 236 feet; at 33 feet, 304 feet; at 30 feet, 372 feet; at 27 feet, 433 feet; and from that point on his view to the west was virtually unlimited. Therefore, from the time that Heyda reached a point 40 feet from the main track, the train, which consisted of two Diesel electric locomotive units (of a bright yellow and green color) and 11 coaches, must have been in plain sight; and the plaintiff's own testimony is that if he had seen the train at any time before the collision he could have stopped or swerved his car to the left. The fireman testified that,

from his seat on the left side of the cab at the front of the first locomotive unit, when the train was about 100 feet west of the Scott Street crossing he saw the Heyda automobile about 50 feet north of the track approaching at a slow speed; that he assumed that the driver would stop; that, as soon as it appeared that the driver did not intend to stop, he (the fireman) called to the engineer, who applied the brakes in emergency at or about the time the collision occurred.

▇▇ A leading Minnesota case which deals with the duty and responsibility of an automobile driver approaching a railroad crossing is Anderson v. Great Northern Railway Co., 147 Minn. 118, at pages 120, 121, 179 N.W. 687, at pages 688, 689, in which the Supreme Court said:

"A railroad grade crossing is a place of danger, and the track itself is a warning.

"A traveler about to cross is charged with notice of the probability of approaching trains at all times, and must look and listen, but need not necessarily halt, when trains are neither seen nor heard. He must alertly use his sight and hearing to discover their approach.

"Within reasonable limits he may act upon the assumption that due care will be exercised in the management of trains and in giving crossing signals.

"When the evidence conclusively shows that a colliding train must have been visible from the point where the traveler should have looked and listened, a conclusive presumption arises, either that he failed to look and listen, or else heedlessly disregarded the knowledge thus obtained, and negligently encountered obvious danger.

"The failure to give the usual crossing signals may justify a traveler in relaxing somewhat in his vigilance, but does not excuse him from looking and listening before going upon the track.

\* \* \* \* \* \*

"* * * If he [the driver of an automobile] does not get an unobstructed view of the track until he is close to it, it is still more imperative that he should look before attempting to cross."

948

That the presence of a railway car on a spur track restricting the vision of the driver of an automobile approaching a railroad crossing does not, under Minnesota law, excuse a lack of care on the part of the driver but, on the other hand, requires extra care, was held in Rintala v. Duluth, Winnepeg. and Pacific Railway Company, 159 Minn. 499, 199 N.W. 562. In that case, the Supreme Court of Minnesota said, at page 505 of 159 Minn., at page 565 of 199 N.W.: "Due care in general is somewhat a matter of relativity. That idea explains the use, in the law of negligence, of the phrase 'commensurate care.' So, whether in a given case there was a duty to stop in order to look and listen, must depend upon the circumstances. Certainly, obstructions to vision, such as the cars on the spur track in this case, do not excuse lack of care. Rather, they require extra care. * * *"

The Supreme Court of Minnesota in three recent cases has reaffirmed the rule which was announced in the Anderson and Rintala cases. Dahlquist v. Minneapolis & St. Louis Railway Co., 230 Minn. 203, 41 N.W.2d 587; Jorgenson v. Minneapolis, St. Paul & Sault Ste. Marie Railway Co., 231 Minn. 121, 42 N.W.2d 540; Rogge v. Great Northern Railway Co., Minn., 47 N.W.2d 475. In each of these three cases the driver of the automobile which collided with the train was held to have been guilty of contributory negligence as a matter of law. In the Dahlquist case the applicable Minnesota rule is stated as follows, at page 205 of 230 Minn., at pages 588–589 of 41 N.W.2d: "The principles of law applicable to the instant case are settled. If the driver of the automobile involved in a collision with a train at a railroad crossing has an adequate opportunity under the surrounding circumstances to know of and see the approaching train in time to avoid the collision, he is guilty of contributory negligence as a matter of law." This rule was quoted with approval and applied by the Supreme Court of Minnesota in the more recent case of Rogge v. Great Northern Railway Co., supra, which was decided after the District Court in the instant case

had denied the defendant's motion for judgment notwithstanding the verdict. In the Rogge case, the Supreme Court of Minnesota said, at page 479 of 47 N.W.2d: "If the obstructions to Mrs. Rogge's view at points more than 50 or 60 feet from the crossing demonstrate anything of significance, it is that she was obligated to use extra care in her approach to this crossing. * * *"

Under the applicable Minnesota rule, as we understand it, if under the evidence the question whether the driver of an automobile which collides with a railroad train had an adequate opportunity to discover the approach of the train in time to avoid the collision is a doubtful one, the question of his contributory negligence is one of fact for the jury. See and compare, Peterson v. Great Northern Railway Co., 159 Minn. 308, 310, 199 N.W. 3, 4; Turner v. Minneapolis, St. Paul & Sault Ste. Marie Railway Co., 164 Minn. 335, 341–343, 205 N.W. 213, 215–216; Polchow v. Chicago, St. Paul, Minneapolis & Omaha Railway Co., 199 Minn. 1, 6–8, 270 N.W. 673, 675–676. But if the evidence shows that the driver had an adequate opportunity to discover the approach of the train in time to avoid colliding with it, he will be charged with knowledge of all that he would have discovered had he made full use of his senses, and will be held to be guilty of contributory negligence as a matter of law in failing to avoid the collision.

Applying the Minnesota rule to the undisputed facts in the instant case, we are of the opinion that Heyda was guilty of contributory negligence as a matter of law. The limitation of his view toward the west, caused by the presence of the box car on the spur track, did not excuse his failure to discover the approach of the train before he reached a point where a collision was inevitable. The obstruction of his view required him to use greater caution in approaching the track than would otherwise have been necessary. He could have seen the train before he passed the box car, but even after he passed it and had an unlimited view to the west he still could have stopped his automobile and have avoided the collision had he seen the

approaching train which was then in plain sight. We think it may not reasonably be held that his opportunity to discover the approach of the train in time to avoid the collision was inadequate.

Our conclusion is that, under the evidence and the Minnesota law, the defendant was entitled to a directed verdict.

The judgment appealed from is reversed, and the case is remanded with directions to enter judgment for the defendant.